# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE CADIRA GROUP | ) | **Consolidated** |
| HOLDINGS, LLC LITIGATION | ) | **C.A. No. 2018-0616-JRS** |

## MEMORANDUM OPINION

Date Submitted: April 14, 2021
Date Decided: July 12, 2021

John L. Reed, Esquire and Matthew Denn, Esquire of DLA Piper LLP (US), Wilmington, Delaware and Ardith Bronson, Esquire and Maia Sevilla-Sharon, Esquire of DLA Piper LLP (US), Miami, Florida, Attorneys for Knights Genesis Healthcare, LLC.

Raymond W. Cobb, Esquire of Law Offices of Raymond W. Cobb, LLC (formerly with O'Hagan Meyer LLP), Wilmington, Delaware and Kevin F. Berry, Esquire of O'Hagan Meyer LLP, Philadelphia, Pennsylvania, Attorneys for Beau Gertz, Perseverance Med, LLC and Cadira Group Holdings, LLC.

**SLIGHTS, Vice Chancellor**

The parties to a healthcare joint venture have lost trust in each other and have brought competing claims that include alleged breach of contract, fraud and breach of fiduciary duty. In October 2017, Beau Gertz presented a business opportunity to representatives of Knights Genesis Healthcare, LLC ("KGH") to partner with his company, Perseverance Med, LLC ("Perseverance"), in forming a vehicle that would make targeted investments in the healthcare field. This led to the creation of Cadira Group Holdings, LLC ("Cadira"), a joint venture operating as the parent company to a number of already-existing and to-be-formed healthcare-related companies. According to KGH, Gertz assured KGH that he had already built a successful healthcare business platform among the operating subsidiaries that were to be rolled into the joint venture and represented that he had the experience and business integrity to build on that success. KGH now says those assurances and representations were false.

Following closing on the joint venture, in July 2018, KGH received word that Cadira and Gertz had been sued in Missouri by at least 25 health insurance companies, each of which alleged Gertz and Cadira's subsidiaries were engaged in widespread healthcare fraud. Less than a month later, KGH initiated this litigation in which it seeks rescission of the agreements that created Cadira and damages resulting from Gertz's alleged fraudulent inducement, breach of Cadira's operating agreement, unjust enrichment and breaches of fiduciary duty. Cadira, Perseverance

1

and Gertz (the "Cadira Parties") have moved to dismiss those claims under Court of Chancery Rule 12(b)(6).

Cadira has filed its own complaint against KGH for breaches of the parties' joint venture agreements in which it seeks declaratory relief and a decree that KGH must specifically perform its obligation to provide funding to Cadira.[1] KGH has moved to dismiss that complaint, also under Rule 12(b)(6) as well as Rule 12(b)(1).

For reasons explained below, the Cadira Parties' bid to dismiss KGH's complaint fails. KGH has pled fraud with particularity, has well pled that Gertz's dissipation of Cadira assets without proper approval breached the operative agreement governing his conduct as manager of the joint venture and has well pled unjust enrichment as an alternative to breach of contract.

Cadira's complaint likewise survives dismissal. Its claims for breach of contract and related relief sufficiently plead the occurrence of conditions precedent (albeit barely) and this Court has subject matter jurisdiction to adjudicate its claims.

## I. BACKGROUND

I have drawn the facts from well-pled allegations in KGH's Verified First Amended Complaint (the "KGH Complaint") and Cadira's Verified First Amended Complaint (the "Cadira Complaint"), as well as documents incorporated by

---

[1] As discussed below, the competing actions have been consolidated by stipulation of the parties.

2

reference or integral to those pleadings.[2] For purposes of each motion to dismiss, I accept as true each Complaint's well-pled factual allegations and draw all reasonable inferences in favor of the nonmoving party.[3]

## A. Parties

Cadira is a Delaware LLC created on or about February 1, 2018, to serve as the parent company for multiple healthcare-related entities.[4] KGH, a Delaware LLC, is the 49% owner of Cadira.[5] Beau Gertz is the sole manager of Cadira and controller of Perseverance.[6] Perseverance is a Colorado LLC that controls at least 51% of Cadira.[7]

---

[2] KGH's Verified Am. Compl. ("KGH Compl.") (D.I. 14) (filed in Consol. Action No. 2018-0616-JRS); Cadira's Verified Am. Compl., *Cadira Hldgs. Gp., LLC vs. Knight's Genesis Healthcare, LLC*, C.A. 2018-0877-JRS ("Cadira Compl.") (D.I. 3); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference" or "integral" to the complaint). Unless specific reference is made to C.A. 2018-0877-JRS, all case documents can be found in the docket for the consolidated action.

[3] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

[4] KGH Compl. ¶¶ 10, 14, 27.

[5] KGH Compl. ¶ 6. I note that this is contested by the Cadira Parties, who argue that the plain terms of Cadira's operating agreement establish that KGH never became a member of Cadira. Cadira Parties' Opening Br. in Supp. of Mot. to Dismiss KGH's Compl. ("Cadira OB") (D.I. 15) at 30–32; Cadira Compl. ¶¶ 34, 51, 56.

[6] KGH Compl. ¶¶ 7, 9; Cadira Compl. ¶ 25.

[7] KGH Compl. ¶ 8.

3

**B. The Parties Form Their Joint Venture**

In October 2017, representatives of KGH, Feng Li and Vincent Xie, were introduced to Gertz through a mutual acquaintance.[8] The parties held a formal meeting on October 6, 2017, during which Gertz proposed that the parties form a joint venture (the "October 6 Meeting").[9] Specifically, Gertz proposed that Li and Xie, acting through KGH, and Gertz, acting through Perseverance, create a new entity, Cadira, "in pursuit of lucrative business opportunities in the healthcare sector."[10] Under this arrangement, Cadira would be the parent entity for several companies controlled by Perseverance that were already operating in the healthcare sector, including Serodynamics.[11] Gertz made clear through his presentation that he, Perseverance and Cadira would "always operate with the highest degree of integrity, in complete compliance with the law, with medical ethics and with respect to the dignity of all we serve."[12] He also indicated that the companies under the

---

[8] KGH Compl. ¶ 13; Cadira Compl. ¶ 6.

[9] KGH Compl. ¶ 14; Cadira Compl. ¶¶ 7–9.

[10] KGH Compl. ¶ 14; Cadira Compl. ¶¶ 8–9.

[11] KGH Compl. ¶ 14; Cadira Compl. ¶ 9.

[12] KGH Compl. ¶ 16; Cadira Compl. ¶ 11.

4

Perseverance umbrella that were to become Cadira's subsidiaries (if KGH invested) had realized net profits exceeding $27 million from 2016 to 2017.[13]

In December 2017, Gertz informed KGH of a unique opportunity to acquire a distressed rural hospital in Cedarville, California called the Surprise Valley Hospital ("Surprise Valley").[14]  This led to the December 22, 2017 "Memorandum of Understanding" between KGH and Cadira, summarizing the proposal to acquire Surprise Valley.[15]

## C. The Joint Venture Agreements

To formalize the acquisition of Surprise Valley and KGH's general interest in pursuing the joint venture through Cadira, the parties entered into two agreements.[16] First, on January 17, 2018, Cadira and KGH executed a "Promissory Note," under which KGH loaned $1 million to Cadira to help facilitate Cadira's acquisition of Surprise Valley.[17]  Then, on February 1, 2018, Cadira and KGH executed the "Subscription Agreement," effective retroactively as of January 1, 2018, under which KGH was to receive 49% of the membership interests of Cadira in exchange

---

[13] KGH Compl. ¶ 18.

[14] KGH Compl. ¶ 21; Cadira Compl. ¶ 14.

[15] KGH Compl. ¶ 22; Cadira Compl. ¶ 15.

[16] KGH Compl. ¶¶ 24–28.

[17] KGH Compl. ¶ 25; KGH Compl., Ex. C; Cadira Compl. ¶ 22.

5

for: (1) a payment of $2 million to be used to pay down the prior owners (in addition to $500,000 already transferred by KGH); (2) a separate payment of $1 million to be used for working capital of Cadira, payable on February 9, 2018; and (3) payment of an additional $1.5 million "on an as needed basis for working capital of the Company subject to the unanimous consent of the Members that the amounts so requested by the Manager are reasonably necessary to the operations of the Company," with the understanding that "such consent [was] not to be unreasonably withheld."[18]

At the same time, also on February 1, 2018, Cadira and Perseverance executed the Operating Agreement of Cadira Group Holdings, LLC (the "Operating Agreement").[19] That agreement contains a number of provisions relevant to this dispute.

Under Section 5.01, Gertz was appointed Manager with responsibility to "direct, manage and control the business of [Cadira]."[20] Section 5.04 requires Gertz to perform his duties "in good faith, in a manner [he] reasonably believe[s] to be in the best interest of the Company, and with such care as an ordinarily prudent person

---

[18] KGH Compl. ¶ 26; KGH Compl., Ex. B ("Subscription Agreement"); Cadira Compl. ¶ 23.

[19] KGH Compl. ¶ 27; Cadira Compl. ¶ 24.

[20] KGH Compl. ¶ 27; KGH Compl., Ex. E ("Operating Agreement") § 5.01.

in a like position would use under similar circumstances."[21]  That same provision

also provides for limits on the Manager's liability:

> A Manager [i.e., Gertz] shall not be liable to the Company or to any Member [i.e., KGH] for any loss or damage sustained by the Company or any Member so long as such action or omission does not constitute fraud, gross negligence, willful misconduct or a material breach of this Agreement by such Manager or is not made in knowing violation of the provisions of this Agreement.[22]

And, as a further limitation, Section 13.02(a) provides:

> It is the intent of this Section [13.02] to restrict the liability and fiduciary duties of the Members [i.e., KGH] and the Managers [i.e., Gertz] to the maximum extent permitted by applicable law. Neither the Company nor any Member or Manager shall have any claim against any Member or Manager, provided that such act or omission was performed by the Member or Manager within the scope of its authority under this Agreement and that such act or omission did not involve the Member's or Manager's bad faith, gross negligence, willful misconduct or actual fraud, REGARDLESS OF WHETHER SUCH ACT OR OMISSION CONSTITUTED THE SOLE, PARTIAL OR CONCURRENT NEGLIGENCE (WHETHER ACTIVE OR PASSIVE) OF THE MEMBER OR MANAGER.[23]

Sections 5.06 and 6.04 required Gertz, as Manager, to obtain unanimous

approval from all Members (as defined) in order to write checks, withdraw funds

from Cadira's bank accounts, incur debt, enter into, amend, waive or terminate any

related party agreement, enter into or effect any one of a number of transactions or

---

[21] KGH Compl. ¶ 31; Operating Agreement § 5.04.

[22] Operating Agreement § 5.04.

[23] KGH Compl. ¶ 30; Operating Agreement § 13.02 (capitalization in original).

7

appoint/remove Cadira's officers and management.[24] The "Members" identified in the Operating Agreement are KGH and Perseverance.[25]

Finally, Section 8.02(b) provides that "[u]pon making the Capital Contributions specified on Exhibit A, each Member shall own the Membership Interest set forth opposite such Member's name on Exhibit A."[26] Exhibit A denotes KGH's "membership" and "economic" interests as 49%, reflects a capital contribution of $5 million and references the terms of KGH's capital contribution as set forth in the Subscription Agreement.[27] It denotes Perseverance's "membership" and "economic" interests as 51% and reflects its capital contribution as $0.[28]

### D. Gertz's Alleged Breach of the Operating Agreement

It is alleged that, notwithstanding the bargained-for limits on his authority, Gertz regularly withdrew funds from Cadira's bank accounts, wrote checks on Cadira's behalf, hired and terminated employees, and incurred company debt, all without consulting with KGH.[29] These acts allegedly violated both express

---

[24] KGH Compl. ¶ 29; Operating Agreement §§ 5.06, 6.04.

[25] Operating Agreement, Ex. A.

[26] Operating Agreement § 8.02(b).

[27] Operating Agreement, Ex. A.

[28] *Id.*

[29] KGH Compl. ¶ 32.

8

contractual commitments and the Operating Agreement's standards of conduct expected of the Manager, as set forth in Sections 5.06 and 6.04.[30]

### E. Cadira Sends Notice of Default to KGH

As noted, under the Subscription Agreement, KGH committed to a capital contribution to Cadira of $5 million to fund its operations. According to the Cadira Parties, KGH has refused to contribute the $1.5 million for working capital that was to be paid on an "as needed basis," despite repeated requests.[31] On April 30, 2018, Cadira's general counsel sent notice to KGH that it was in violation of its funding obligations under the Subscription Agreement and demanded the payment of an additional $1.5 million as a condition precedent to the vesting of KGH's membership rights in Cadira.[32] Upon evaluation of Cadira's request, KGH chose not to provide the $1.5 million because, as it reads the parties' agreements, this contribution was subject to the unanimous consent of the Members and, as a Member, it did not consent.[33] In early July 2018, Gertz seized the operations of Cadira and unilaterally terminated all employees.[34]

---

[30] KGH Compl. ¶¶ 29, 31–32.

[31] Cadira Compl. ¶¶ 39, 46; Cadira OB at 31.

[32] KGH Compl. ¶ 34; Cadira Compl. ¶¶ 45–46.

[33] KGH Compl. ¶ 36.

[34] KGH Compl. ¶ 39; Cadira Compl. ¶ 47.

**F. KGH Discovers Alleged Insurance Fraud and False Accounting**

On July 30, 2018, well after the joint venture closed, KGH was alerted to the existence of a Missouri lawsuit against Gertz and a number of his related entities, including one of Cadira's subsidiaries, Serodynamics (the "Missouri Action").[35] In the Missouri Action, 25 insurance companies, each part of the Blue Cross Blue Shield network, sued Gertz and certain entities he controls alleging insurance fraud.[36] KGH's Complaint makes frequent references to the complaint in the Missouri Action (the "Missouri Complaint"), particularly its allegations that Serodynamics engaged in a fraudulent billing scheme whereby Serodynamics would perform laboratory testing but would bill the testing through Putnam County Memorial Hospital (for higher reimbursements) as if the tests were performed at and by Putnam.[37] KGH's Complaint also references the Missouri Complaint's allegations that Gertz conspired with a variety of other defendants in that action fraudulently to bill for the tests performed by Serodynamics through Putnam.[38] KGH alleges that, had it known about this alleged conduct by Gertz on behalf of all of his companies, including one of the entities rolled into Cadira as part of the joint

---

[35] KGH Compl. ¶ 41.

[36] KGH Compl. ¶ 2; KGH Compl., Ex. A ("Missouri Complaint").

[37] KGH Compl. ¶ 42.

[38] KGH Compl. ¶ 43.

venture, it never would have done business with Gertz or any of his entities.[39]  KGH also alleges that, contrary to Gertz's representation at the October 6 Meeting that the proposed Cadira subsidiaries were highly profitable, the Cadira subsidiaries were, in fact, not generating any profit at all and were, instead, on the verge of shutting down.[40]

## G. Procedural History

KGH filed its initial complaint in this action on August 21, 2018, before filing the operative KGH Complaint on December 4, 2018.[41]  On the same day KGH filed the KGH Complaint, December 4, Cadira filed its own complaint.[42]  The operative Cadira Complaint was filed on December 13, 2018.[43]  The Cadira Parties filed their motion to dismiss the KGH Complaint on December 14, 2018,[44] followed by KGH's motion to dismiss the Cadira Complaint on March 25, 2019.[45]  In the meantime, on March 18, 2019, the Court granted the parties motion to consolidate the two

---

[39] KGH Compl. ¶ 45.

[40] KGH Compl. ¶ 38.

[41] D.I. 1; D.I. 14.

[42] *Cadira Hldgs. Gp., LLC vs. Knight's Genesis Healthcare, LLC*, C.A. 2018-0877-JRS (D.I. 1).

[43] *Id.* at D.I. 3.

[44] D.I. 15.

[45] D.I. 22.

actions.[46] The Court heard argument on the two motions on April 14, 2021, and they were submitted for decision that day.

KGH's Complaint comprises six counts: (1) common law fraud/fraudulent concealment against all of the Cadira Parties associated with Gertz's alleged insurance fraud scheme; (2) equitable fraud against Gertz regarding the same conduct; (3) breach of certain provisions of the Operating Agreement resulting from Gertz's dissipation of assets, among other things; (4) breach of fiduciary duties, brought derivatively on behalf of Cadira against Gertz, resulting from the same conduct underlying the breach of contract claim; (5) breach of fiduciary duties, brought directly against Gertz, largely aligning with the derivative fiduciary duty claim; and (6) unjust enrichment resulting from Gertz's alleged fraudulent and wrongful conduct.[47]

Meanwhile, Cadira's Complaint, comprises three counts, including a prayer for a declaratory judgment that KGH has breached its funding obligations under the Subscription Agreement and Operating Agreement and an injunction to require KGH to comply with its funding requirements and prevent KGH from asserting its rights to ownership in Cadira.[48]

---

[46] D.I. 19.

[47] KGH Compl. ¶¶ 51–86.

[48] Cadira Compl. ¶¶ 48–63.

## II. ANALYSIS

The standard for deciding a motion to dismiss under Court of Chancery Rule 12(b)(6) is well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[49]

Under Rule 12(b)(1), this court will dismiss a claim "if it appears from the record that the Court does not have subject matter jurisdiction over the claim."[50] "Unlike the standards employed in [a] Rule 12(b)(6) analysis, . . . [under 12(b)(1)] [t]he burden is on the Plaintiff[] to prove jurisdiction exists. Further, the Court need not accept Plaintiff['s] factual allegations as true and is free to consider facts not alleged in the complaint."[51]

---

[49] *Savor, Inc.*, 812 A.2d at 896–97 (citation omitted).

[50] *Pitts v. City of Wilm.*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009).

[51] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (cleaned up).

I begin by addressing the Cadira Parties' motion to dismiss the KGH Complaint under Rule 12(b)(6), and then turn to KGH's motion to dismiss the Cadira Complaint under both Rules 12(b)(6) and 12(b)(1).

## A. KGH's Fraud Claims

KGH brings claims for both common law and equitable fraud against the Cadira Parties alleging Gertz made fraudulent representations that he conducted his businesses in compliance with the law even though he was engaged in a rampant insurance fraud scheme. "Whatever amounts to fraud, according to the legal conception, is also fraud in equitable conception."[52] While equitable fraud is "separate from, and broader, than common law fraud," because (1) KGH well pleads the elements of common law fraud, and (2) the Cadira Parties advance the same arguments in opposition to both theories of fraud alleged, I need only address the common law fraud claim.[53]

To state a claim for common law fraud, a plaintiff must well plead the following elements:

---

[52] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 143 (Del. Ch. 2009) (citation omitted).

[53] *Id.* One potential basis the Cadira Parties might have separately attacked KGH's equitable fraud claim is for failing to allege the requisite fiduciary relationship. *Id.* at 144 ("Equitable fraud is not available in every case or to every plaintiff. It requires special equities, typically the existence of some form of fiduciary relationship . . . ."). Neither party raised that issue, however, so I need not address it. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.[54]

Under Chancery Court Rule 9(b), "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."[55] "The requirements of the particularity standard are well established: 'The circumstances which shall be stated with particularity in Rule 9(b) refer to the time, place and contents of the false representations, the facts misrepresented, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"[56] "Essentially, the plaintiff is required to allege the circumstances of the fraud with detail sufficient to apprise the

---

[54] *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992); *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *32 (Del. Ch. Dec. 3, 2018) (citing *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461–62 (Del. 1999)) (same). The first element of common law fraud, a "false representation," can take several forms, including an "overt misrepresentation (i.e., a lie), a deliberate concealment of material facts, or else silence in the face of a duty to speak." *Maverick Therapeutics, Inc. v. Harpoon Therapeutics, Inc.*, 2020 WL 1655948, at *26 (Del. Ch. Apr. 3, 2020) (cleaned up). KGH alleges both overt misrepresentations and deliberate concealment here.

[55] *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 144 (Del. Ch. 2004) (quoting Ct. Ch. R. 9(b)).

[56] *Id.* (quoting *York Linings v. Roach*, 1999 WL 608850, at *2 (Del. Ch. July 28, 1999) (internal quotations and citations omitted)).

defendant of the basis for the claim."[57] With that said, "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally."[58]

KGH has cleared Rule 9(b)'s particularity hurdle here. The KGH Complaint alleges Gertz made two false representations to KGH, by statement or omission, with the intent to induce KGH into forming the joint venture, and that if KGH knew these representations were false, it never would have done business with him or his controlled entities. First, KGH alleges that, at the October 6 Meeting, Gertz told KGH that "[w]e will always operate with the highest degree of integrity, in complete compliance with the law, with medical ethics and with respect to the dignity of all we serve."[59] As it turned out, according to the KGH Complaint, at the time Gertz made this statement, Gertz was the architect of a massive overbilling scheme that would soon become the subject of a lawsuit filed by 25 healthcare insurance companies against Gertz and the entities he controlled.[60] When the lawsuit was filed, the parties had already closed on their joint venture. And yet Gertz never disclosed

---

[57] *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).

[58] Ct. Ch. R. 9(b). I note that the Cadira Parties have not argued the fraud claims are barred by contractual anti-reliance provisions or as bootstrapped breach of contract claims. The only ground for dismissal proffered by the Cadira Parties is a failure to plead fraud with the requisite particularity. Cadira OB at 17–18.

[59] KGH Compl. ¶ 16.

[60] KGH Compl. ¶¶ 41–43.

the existence of the Missouri Action to KGH; it was left to discover that disturbing news on its own.[61]

The KGH Complaint's reference to the detailed facts in the Missouri Complaint, and its allegations of what was said, and not said, at the October 6 Meeting (and after), well pleads the so-called "newspaper facts"[62] regarding the "who, what, where, when and how of the fraud."[63] Stated in Rule 9(b) terms, the KGH Complaint well pleads that Gertz assured KGH at the October 6 Meeting that he, Perseverance and his other companies operated "in complete compliance with the law" (the who, what, when and where), knowing that the assurance was false because Gertz, Perseverance and other Gertz-controlled entities were, at the time of the assurance, engaged in a massive insurance overbilling scheme. The KGH Complaint goes on to allege that Gertz's motivation for giving the false assurance was clear: he intended to induce KGH to invest in Cadira.[64]

---

[61] KGH Compl. ¶¶ 52–56; *see also* KGH's Answering Br. in Opp'n to the Cadira Parties' Mot. to Dismiss KGH's Compl. and KGH's Opening Br. in Supp. of Mot. to Dismiss Cadira's Compl. ("KGH AB/OB") (D.I. 22) at 18 n.11 ("The Missouri Action was commenced on March 30, 2018 . . . .").

[62] *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *16 (Del. Ch. June 11, 2020).

[63] *Envolve Pharmacy Sols., Inc. v. Rite Aid Hdqtrs. Corp.*, 2021 WL 140919, at *8 (Del. Super. Ct. Jan. 15, 2021) (cleaned up).

[64] KGH Compl. ¶¶ 14, 55.

Second, at the same October 6 Meeting, Gertz represented to KGH's representatives that the companies he would contribute to the joint venture "had experienced net profits exceeding $27 million from 2016 to 2017."[65] Yet, "[f]inancial statements of Cadira [later] provided by Gertz to KGH revealed that . . . the Cadira group of companies was not generating any profits and was on the verge of shutting down."[66] Again, in Rule 9(b) terms, the KGH Complaint identifies Gertz as making a specific, knowingly false statement of fact (not a future prediction of financial performance) at a specific meeting with the intent to induce KGH into investing into a joint venture, and that KGH, in fact, relied upon the false statement to its detriment. These well-pled facts state a legally viable claim of fraud.[67]

The Cadira Parties' principal basis for seeking dismissal of all of KGH's fraud claims is that the allegations surrounding the underlying insurance fraud are not stated with particularity.[68] Specifically, the Cadira Parties argue that, to state a claim

---

[65] KGH Compl. ¶ 18.

[66] KGH Compl. ¶ 38.

[67] *See, e.g.*, *Surf's Up Legacy P'rs, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *14 (Del. Super. Ct. Jan. 13, 2021) (finding a well-pled fraud claim related to financials where they were presented with an incomplete and false picture of past performance for the purpose of inducing a transaction only to be discovered as false by the buyer post-closing).

[68] Cadira OB at 14–16.

of fraud with particularity, mere reference to allegations in a complaint filed in another action will not suffice.[69]

If the fraud claim brought here was the underlying insurance fraud at issue in the Missouri Action, I would agree that mere reference to the Missouri Complaint would likely fall short of satisfying Rule 9(b)'s particularity requirement. As the Cadira Parties correctly argue, KGH did not separately investigate the Missouri fraud claims and cannot assert the allegations in the Missouri Complaint as true facts here.[70] But that is not the fraud KGH has alleged in its Complaint. Rather, the KGH Complaint alleges Gertz committed fraud against KGH by misrepresenting the prospective companies' legal compliance and financial fortitude.[71] Those fraudulent statements have been stated with sufficient particularity under our rules. Of course, if the allegations in the Missouri Action turn out to be unfounded, that may undermine KGH's fraud claims here. But, for now, the point of KGH's fraud claim is that Gertz represented he was a law abider at a time when he was engaged in conduct that the later-filed Missouri Action alleged to be illegal, and yet he did not disclose the existence of that conduct to KGH. The truth (or not) of the allegations in the Missouri Complaint is beside the point. It is Gertz's alleged knowledge of the

---

[69] *Id.* at 17–19.

[70] *Id.* at 14–16.

[71] KGH Compl. ¶¶ 16, 18.

19

potential that he and his entities would be subject to claims of fraud, as outlined in the soon-to-be-filed Missouri Complaint, at the time he gave assurances to KGH that matters.

On this point, there is an important distinction the Cadira Parties fail to appreciate. They argue that, under the doctrine of judicial notice, the Court cannot even consider the Missouri Complaint when making a determination of whether KGH has sufficiently stated any claim, much less its fraud claim.[72] Our court takes judicial notice of facts that "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[73] The Cadira Parties argue that, because the allegations in the Missouri Complaint are neither generally known nor of the sort where their accuracy cannot be questioned, the allegations must be ignored altogether. This conception of judicial notice fails to recognize that one document category of which this court frequently takes judicial notice is public records.[74] In this context, of course, the court cannot take judicial notice of the truth

---

[72] Cadira OB at 14–16.

[73] Del. R. Evid. 201(b)(1)–(2).

[74] *See, e.g.*, *Judy v. Preferred Commc'n Sys., Inc.*, 2016 WL 4992687, at *2 (Del. Ch. Sept. 19, 2016) (taking into account "pertinent public records that are subject to judicial notice"); *Aequitas Sols., Inc. v. Anderson*, 2012 WL 2903324, at *3 n.17 (Del. Ch. June 25, 2012) (taking judicial notice of a pleading filed in a related action); *In re Wheelabrator Techs., Inc. S'holders Litig.*, 1992 WL 212595, at *11–12 (Del. Ch. Sept. 1, 1992) (taking judicial notice, on a motion to dismiss, of documents of public record); *Baca v. Insight*

of the factual matters asserted in those public records, only that they exist, are authentic and contain the content they purport to contain.[75]

Here, to reiterate, the Court is not being asked to take judicial notice of the truth of allegations in the Missouri Complaint; rather, for purposes of this motion to dismiss, the Court is asked to take notice that a lawsuit in Missouri was filed soon after closing of the joint venture in which Gertz and his controlled entities are alleged to have been engaged in a long-running, widespread insurance fraud scheme.[76] Based on the well-pled allegations in the KGH Complaint, the existence of the Missouri Complaint and the nature of the parties bringing that lawsuit allows a reasonable inference, at this stage, that Gertz's statement at the October 6 Meeting was false.[77]

---

*Enters., Inc.*, 2010 WL 2219715, at *1 (Del. Ch. June 3, 2010) (taking judicial notice, on a motion to dismiss, of filings in pending derivative and securities actions); *Nelson v. Emerson*, 2008 WL 1961150, at *2 n.2 (Del. Ch. May 6, 2008) (same); *Orloff v. Shulman*, 2005 WL 3272355, at *12 (Del. Ch. Nov. 23, 2005) (taking judicial notice of pleadings in a bankruptcy proceeding).

[75] *See, e.g.*, *Glaski v. Bank of Am.*, 218 Cal. App. 4th 1079, 1090 (5th Dist. 2013) ("Courts can take judicial notice of the existence, content and authenticity of public records and other specified documents, but do not take judicial notice of the truth of the factual matters asserted in those documents.").

[76] KGH Compl. ¶ 2; *Clifford Paper, Inc. v. WPP Invs., LLC*, 2021 WL 2211694, at *5 (Del. Ch. June 1, 2021) ("Chancery Rule 12(b)(6) requires dismissal of a complaint if the plaintiff cannot recover under 'any reasonably conceivable set of circumstances susceptible of proof' based on the complaint's pled facts." (citation omitted)).

[77] In the same vein, the Cadira Parties argue that *res judicata* does not permit the Court to take all of the allegations in the Missouri Complaint as true. Cadira OB at 15–16. Here, I agree. One key purpose of *res judicata* is to use a prior action to "bar [a party in]

21

Finally, the KGH Complaint well pleads that Gertz knew his statements were false when made, that he intended to induce KGH to enter into the joint venture through the statements and that KGH reasonably relied on the statements when making its investments. As mentioned, knowledge and intent need only be averred generally.[78] The KGH Complaint allows a reasonable inference that Gertz was willfully engaging in wrongful and illegal conduct at the time of the transaction, and yet made a conscious choice to avoid mention of any potential noncompliance throughout the negotiations.[79] As for reliance, "the reasonableness of a plaintiff's reliance is a factual inquiry that is typically resolved with the benefit of discovery rather than at the pleadings stage."[80] Here, KGH lacked knowledge about Gertz's improper billing practices at the time of contracting and had no reason to doubt

_____

a subsequent action" from bringing the same claims. *Bailey v. City of Wilm.*, 766 A.2d 477, 481 (Del. 2001). Of course, for *res judicata* to apply, "the prior adjudication must be final." *Id.* The Missouri Action is pending. With this all said, to reiterate, KGH is not asking this Court to take the allegations in the Missouri Complaint as true, as *res judicata* would suggest, but rather is asking the Court to draw an inference from the existence of such allegations that Gertz was not truthful about his past compliance with the law in his healthcare businesses. That inference, at least at this stage, is appropriate and does not implicate the doctrine of *res judicata*.

[78] *Abry P'rs*, 891 A.2d at 1050.

[79] KGH Compl. ¶¶ 16, 23, 42–43.

[80] *McDonald's Corp. v. Easterbrook*, 2021 WL 351967, at *9 (Del. Ch. Feb. 2, 2021) (quoting *Forman v. CentrifyHealth, Inc.*, 2019 WL 1810947, at *12 (Del. Ch. Apr. 25, 2019)).

22

Gertz's representations.[81]  KGH was made up of foreign investors with limited experience with the American legal system; a fact (well appreciated by Gertz) that may have contributed to their willingness to trust Gertz and not question his bold representations.[82]  While the Cadira Parties may be correct that KGH's reliance was not reasonable, this is not the time to make that determination.

## B. KGH's Breach of the Operating Agreement Claim

KGH alleges that, in addition to committing fraud, Gertz breached the Operating Agreement in several material respects.  Under Delaware law, to recover for breach of contract, a plaintiff must prove "a contractual obligation, whether express or implied, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[83]  Breach of contract claims are susceptible to disposition on a motion to dismiss "[w]hen the language of [the] contract is plain and unambiguous."[84]  Contract language is ambiguous "only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may

---

[81] KGH Compl. ¶ 44.

[82] KGH Compl. ¶ 13.

[83] *Moore Bus. Forms, Inc. v. Cordant Hldgs. Corp.*, 1995 WL 662685, at *7 (Del. Ch. Nov. 2, 1995).

[84] *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

23

have two or more different meanings."[85]  If the plaintiff has proffered a reasonable construction upon which its claim of breach rests, the motion to dismiss must be denied.[86]

The KGH Complaint alleges Gertz violated a number of the Operating Agreement's provisions.  In contravention to Section 6.04, when purporting to act for Cadira, Gertz wrote checks, withdrew funds, incurred debt, entered into transactions and hired and fired management personnel "without the unanimous signatures or approval of all Members."[87]  Because Gertz did not obtain approval from KGH, a 49% owner, he did not obtain unanimous consent to engage in these actions and therefore violated the Operating Agreement.

The Cadira Parties argue KGH's alleged breaches of the Operating Agreement fail as a matter of law on two grounds.  *First*, they invoke their stalwart argument that KGH's breach of contract claims must rest on a showing of fraud.  In this regard, the plain language of Section 5.04 of the Operating Agreement states, "[a] manager shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member so long as such action or omission does

[85] *AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008) (citation omitted).

[86]  *Caspian Alpha Long Credit Fund, L.P. v. GS Mezzanine P'rs 2006, L.P.*, 93 A.3d 1203, 1205 (Del. 2014); *Kahn v. Portnoy*, 2008 WL 5197164, at *3 (Del. Ch. Dec. 11, 2008).

[87] KGH Compl. ¶¶ 29, 32; Operating Agreement § 6.04.

not constitute fraud, gross negligence, willful misconduct or a material breach of this Agreement. . . ."[88] While fraud is certainly one way to attach liability to Gertz, as Manager of Cadira, for breach of the Operating Agreement, a showing of "gross negligence, willful misconduct or a material breach" will also suffice.[89] Here, KGH well pleads that Gertz willfully declined to obtain KGH's consent on a number of issues as contractually required, and as a result, Cadira became a mere shell of its former self and unjustifiably burned through KGH's prior investment.[90] This well pleads breach of contract within the parameters prescribed by the Operating Agreement.

*Second*, the Cadira Parties argue that KGH has no standing to prosecute a claim for breach of the Operating Agreement because its 49% voting interest in Cadira has not yet vested, and as a result, Perseverance was, and still is, Cadira's only voting member.[91] If true, the Cadira Parties argue that any "unanimous

---

[88] Operating Agreement § 5.05.

[89] *Id.*

[90] KGH Compl. ¶¶ 29, 32, 39. The KGH Complaint also well pleads that Gertz's breaches were "material," implicating a fact-intensive inquiry not suitable for pleading-stage resolution. *See Chester Cty. Emps.' Ret. Fund v. KCG Hldgs., Inc.*, 2019 WL 2564093, at *10 (Del. Ch. June 21, 2019); *McMullin v. Beran*, 765 A.2d 910, 926 (Del. 2000).

[91] Cadira OB 30–32.

consent" requirement was met because Gertz approved all actions identified in the KGH Complaint as the controller of Perseverance.

Again, while the Cadira Parties' argument may ultimately carry the day, I cannot conclude, as a matter of law, that KGH's voting interest has yet to vest. Section 8.02(b) of the Operating Agreement provides, "[u]pon making the Capital Contributions specified in Exhibit A, each Member shall own the Membership Interest set forth opposite such Member's name on Exhibit A."[92] Section 8.02(c) follows by noting that, "[u]pon making the Capital Contributions specified in Exhibit A, each Member shall have the Voting Interest set forth opposite such Member's name on Exhibit A."[93] Exhibit A provides that KGH's "membership" and "economic" interests amount to 49%, and directly refers to the Subscription Agreement as the avenue through which KGH made its capital contribution.[94] The Subscription Agreement, in turn, provides the amounts that KGH was to invest, and the parties do not dispute that all but $1.5 million has been paid.[95] The $1.5 million in dispute, per the terms of the Subscription Agreement, was to "be made available to the Company on an as needed basis for working capital of the Company subject

---

[92] Operating Agreement § 8.02(b).

[93] Operating Agreement § 8.02(c).

[94] Operating Agreement, Ex. A.

[95] Cadira OB at 31; KGH Compl. ¶¶ 34–35.

to the unanimous consent of the Members that the amounts so requested by the Manager are reasonably necessary to the operations of the Company, such consent not to be unreasonably withheld."[96]

According to KGH, it did not make these funds available to Cadira because it believed there had not been a proper showing that the funds were reasonably necessary to sustain the operations of the Company.[97] On the other hand, the Cadira Parties argue that, "[b]ecause such funds have been requested, and because such funds have been unreasonably withheld, KGH has voided whatever voting rights it might have had based on its initial payments to Cadira."[98] Whether the $1.5 million was "reasonably necessary to the operations of the Company," or whether KGH's consent was "unreasonably withheld," are fact-intensive inquiries not appropriate for resolution on the pleadings.[99] For now, KGH has well pled that it has standing to pursue its breach of contract claims as a Member of Cadira.

---

[96] Subscription Agreement § 1(b)(ii).

[97] KGH Compl. ¶¶ 35–36.

[98] Cadira OB at 31–32.

[99] *Edinburgh Hldgs., Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *14 (Del. Ch. June 6, 2018) (declining to resolve on the pleadings "[t]he question of whether ASPE's post-closing management conducted the ASPE Business Unit 'in a reasonable manner consistent with its past practices'") (citing *Victaulic Co. v. Tieman*, 499 F.3d 227, 227 (3d Cir. 2007) ("Because reasonableness is a fact-intensive inquiry, we hold that it should not have been determined on the pleadings.")); *see also Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at *1 (Del. Ch. Sept. 22, 2016) (holding that "fact intensive" inquiries are "not appropriate for disposition on a motion to dismiss").

## C. KGH's Breach of Fiduciary Duty Claims

KGH has invoked the Operating Agreement's contractual standards of conduct to allege Gertz breached his fiduciary duties owing to KGH as a Member. The Cadira Parties argue in response that the Operating Agreement replaces traditional fiduciary duties with contractual duties, and KGH has failed to state a claim for breach of those duties. Delaware law says otherwise.

The Delaware Limited Liability Company Act (the "LLC Act") provides that "the fiduciary duties of a member, manager, or other person that is a party to or bound by a limited liability company agreement may be expanded or restricted or eliminated by provisions in the limited liability company agreement."[100] If the operating agreement is silent with respect to standards of conduct, then, "[b]y default, the traditional fiduciary duties applicable to corporations [will] apply . . . ."[101]

---

[100] *Zimmerman v. Crothall*, 62 A.3d 676, 702 (Del. Ch. 2013) (cleaned up); 6 *Del. C.* § 18–1101(c) ("To the extent that, at law or in equity, a member or manager . . . has duties (including fiduciary duties) to a limited liability company or to another member or manager . . . , the member's or manager's . . . duties may be expanded or restricted or eliminated by provisions in the limited liability company agreement . . . .").

[101] *Ross Hldg. & Mgmt. Co. v. Advance Realty Gp.,* LLC, 2014 WL 4374261, at *12 (Del. Ch. Sept. 4, 2014); *see also Auriga Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 852 (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012) ("[T]he [LLC] statute allows the parties to an LLC agreement to entirely supplant those default [fiduciary duty] principles or to modify them in part. Where the parties have clearly supplanted default principles in full, we give effect to the parties' contract choice. Where the parties have clearly supplanted default principles in part, we give effect to their contract choice." (citations omitted)).

"Drafters of a limited liability company agreement 'must make their intent to eliminate fiduciary duties plain and unambiguous.'"[102] Where an LLC agreement purports to replace traditional fiduciary duties with duties not to engage in bad faith, willful misconduct, or gross negligence, that agreement essentially "replaces" traditional fiduciary duties with identical contractual duties.[103] For example, in *CMS Investment Holdings, LLC v. Castle*, the court analyzed breach of contract claims under traditional fiduciary duty jurisprudence where the "replacement" contractual duties were to avoid "gross negligence, willful misconduct or knowing violation of law."[104] As the court noted, those duties directly correspond with the "default standards of care and loyalty under Delaware law."[105] In other words, a contractual duty to refrain from "willful misconduct" or "bad faith" corresponds with the

---

[102] *Ross Hldg.*, 2014 WL 4374261, at *12 (quoting *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 664 (Del. Ch. 2012)).

[103] *CMS Inv. Hldgs., LLC v. Castle*, 2015 WL 3894021, at *18 (Del. Ch. June 23, 2015); *see also Smith v. Scott*, 2021 WL 1592463, at *10 (Del. Ch. Apr. 23, 2021) (recognizing the traditional duty of loyalty is implicated by contractual language prohibiting "bad faith" and "willful misconduct" and the traditional duty of care is implicated by contractual language prohibiting "gross negligence").

[104] 2015 WL 3894021, at *18.

[105] *Id.*

traditional duty of loyalty,[106] and a contractual duty to refrain from "gross negligence" corresponds with the traditional duty of care.[107]

Section 13.02 of the Operating Agreement begins with a statement that, at first glance, evinces an intent to replace traditional fiduciary duties: "[i]t is the intent of this Section [13.02] to restrict the liability and fiduciary duties of the Members and the Managers to the maximum extent permitted by applicable law."[108] But, as in *CMS*, Section 13.02 then green-lights claims against the Manager arising from the "Manager's bad faith, gross negligence, willful misconduct or actual fraud."[109] Given this language, it cannot be said the drafters of the Operating Agreement evinced a "plain and unambiguous" intent fully to displace traditional fiduciary

---

[106] *United Bhd. of Carpenters Pension Plan v. Fellner*, 2015 WL 894810, at *4 (Del. Ch. Feb. 26, 2015) ("Willful misconduct is one standard for evaluating whether a fiduciary breached the duty of loyalty by acting in bad faith."); *Feeley*, 62 A.3d at 664 (same); *Zimmerman v. Crothall*, 2012 WL 707238, at *6 (Del. Ch. Mar. 5, 2012), as revised (Mar. 27, 2012) (concluding that "self-dealing" and "willful misconduct" correspond with the duty of loyalty). "Bad faith" is another index for the fiduciary duty of loyalty. *Stewart v. BF Bolthouse Holdco, LLC*, 2013 WL 5210220, at *11 (Del. Ch. Aug. 30, 2013) ("[T]he duty of loyalty encompasses . . . director actions taken in bad faith.").

[107] *Feeley*, 62 A.3d at 664 ("Gross negligence is the standard for evaluating a breach of the duty of care.").

[108] Operating Agreement § 13.02.

[109] *Id.*

duties.[110]   Accordingly, as pled, Gertz owes the default traditional fiduciary duties of care and loyalty to KGH.[111]

The KGH Complaint alleges Gertz violated his duty of loyalty by knowingly declining to obtain KGH's consent when required, including when writing checks, withdrawing Company funds, incurring debt and hiring/firing employees.[112]  The KGH Complaint well pleads that Gertz committed these acts for self-interested reasons to, among other things, enrich himself and facilitate his insurance fraud scam.[113]  An inference of bad faith is well supported here; the KGH Complaint's factual allegations create a reasonable inference that Gertz knew KGH's consent was required and yet willfully chose to ignore his contractual obligations as he ran Cadira

---

[110] *Ross Hldg.*, 2014 WL 4374261, at *12.

[111] Other provisions in the Operating Agreement support this conclusion.  Section 5.04 requires "Managers" to "perform their Managerial duties in good faith, in a manner they reasonably believe to be in the best interest of the Company, and with such care as an ordinarily prudent person in a like position would use. . . ."  This tracks the language of the business judgment rule, which, all else being equal, is rebutted by proof of a duty of loyalty or care violation.  *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 52 (Del. 2006) ("Our law presumes that 'in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.'  Those presumptions can be rebutted if the plaintiff shows that the directors breached their fiduciary duty of care or of loyalty or acted in bad faith." (citation omitted)).  Likewise, the latter part of Section 5.04, similar to Section 13.02, prevents a "Manager" from taking actions constituting "fraud, gross negligence, willful misconduct or a material breach of this Agreement."

[112] KGH Compl. ¶¶ 32, 75.

[113] KGH Compl. ¶¶ 32, 75, 79.

31

for his sole benefit in the manner he saw fit.[114] This type of deliberate action is the definition of bad faith and, at this stage, more than satisfies KGH's low pleading burden.[115]

### D. KGH's Unjust Enrichment Claim

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[116] "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[117]

---

[114] *See, e.g.*, *Anglo Am. Sec. Fund, L.P. v. S.R. Glob. Int'l Fund, L.P.*, 829 A.2d 143, 157 (Del. Ch. 2003) (inferring bad faith from circumstances surrounding manager's decision not to promptly disclose certain cash withdrawals from the company).

[115] I note that the fiduciary duty and contract claims are at least related if not overlapping. Because the Cadira Parties have failed to argue that the fiduciary duty claims are improperly duplicative of the breach of contract claim, any such argument is waived. *Emerald P'rs*, 726 A.2d at 1224 ("Issues not briefed are deemed waived."). Likewise, the Cadira Parties have not argued that KGH failed to plead demand futility under Rule 23.1 with respect to its derivative claim for breach of fiduciary duty (Count V). Again, that argument is waived. *Id.* For what it is worth, KGH does plead that demand upon Gertz, as Cadira's sole Manager, would be futile. KGH Compl. ¶¶ 48–50.

[116] *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) (citation omitted).

[117] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

KGH claims that, in the event the Court finds that its 49% membership interest in Cadira did not vest, the Cadira Parties have unjustifiably retained $4.5 million that KGH provided, in part, as consideration for its equity interest in Cadira.[118] The enrichment to the Cadira Parties resulted, according to KGH, from Gertz fraudulently inducing KGH to invest.

The Cadira Parties only argument for dismissal of the unjust enrichment claim is that the fraud component of this claim is not pled with particularity.[119] That argument assumes, incorrectly, that fraud is a *prima facie* element of unjust enrichment. It is not.[120] In any event, even if KGH were obliged to plead fraud in support of its unjust enrichment claim, as explained above, it has done so here.

---

[118] KGH Compl. ¶¶ 81–86.

[119] Cadira OB at 29. Here again, the Cadira Parties did not advance an argument they might have made, namely, that the Operating Agreement displaces the unjust enrichment claim. I suspect the Cadira Parties elected not to make the duplication argument because the unjust enrichment claim rests on the predicate that the Court determines KGH lacks standing to assert a breach of the Operating Agreement. If that was the reason the Cadira Parties elected not to make the argument, the decision was well-founded. *See Weik, Nitsche & Dougherty LLC v. Pratcher*, 2020 WL 5036096, at *4–5 (Del. Ch. Aug. 26, 2020) (holding that an unjust enrichment claim may proceed as an alternative to a breach of contract claim where questions remain regarding whether a valid contract exists or whether plaintiff may pursue a claim on the contract).

[120] *Nemec*, 991 A.2d at 1130.

## E. Cadira's Declaratory Judgment and Injunctive Relief Claims

As Cadira readily acknowledges, "the heart of [all of] its claims is that KGH breached its contractual obligation to provide funding it agreed to provide."[121] As already mentioned, that funding obligation arises from the Subscription Agreement, and requires the payment of $1.5 million "on an as needed basis for working capital of the Company subject to the unanimous consent of the Members that the amounts so requested by the Manager are reasonably necessary to the operations of the Company" and where "such consent [was] not to be unreasonably withheld."[122] The Cadira Complaint seeks declarations that KGH violated its funding obligations by failing to pay the $1.5 million, in breach of the Subscription Agreement, and an order compelling KGH to pay the $1.5 million and enjoining KGH from asserting its rights as an owner of Cadira given its failure to meet those funding obligations.

KGH argues for dismissal on two grounds: (1) the Cadira Complaint fails to plead satisfaction of certain conditions precedent necessary to invoke KGH's funding obligations, and (2) Count III impermissibly seeks injunctive relief to force the payment of money. For reasons explained below, the Cadira Complaint meets

---

[121] Cadira Parties' Reply Br. in Supp. of Mot. to Dismiss KGH's Compl. and Cadira's Answering Br. in Opp'n to KGH's Mot. to Dismiss Cadira's Compl. (D.I. 24) at 15 n.3.

[122] Subscription Agreement § 1(b)(ii).

the minimal notice pleading standard with respect to its allegations that it has satisfied conditions precedent, although barely. As for the jurisdictional argument, the result is a mixed bag.

### 1. The Cadira Complaint Well Pleads the Satisfaction of Conditions Precedent

In well-pleading a claim for breach of contract, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[123] "Such a statement must only give the defendant fair notice of a claim and is to be liberally construed."[124] In an action to enforce a contract obligation, it is a general rule that "the plaintiff must allege [the occurrence] . . . of conditions precedent. Thus, where the benefit of a clause in a contract will inure to the plaintiff only on the [occurrence] of certain [conditions], he must allege . . . that [those conditions existed]."[125] In this regard, Chancery Rule 9(c) explains that, "[i]n the

---

[123] Ct. Ch. R. 8(a)(1).

[124] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003); *see also Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (recognizing Rule 8(a)'s notice pleading requirement as "permissive"); *Mooney v. Geriatric Servs. of Del., Inc.*, 2020 WL 7695643, at *3 (Del. Ch. Dec. 28, 2020) (noting the "low threshold to meet" Rule 8(a)'s general notice requirement); *Hindlin v. Gottwald*, 2020 WL 4206570, at *3 (Del. Ch. July 22, 2020) ("This so-called 'notice pleading' standard sets a low bar.").

[125] *Pobst v. Nanticoke Mem'l Hosp.*, 1991 WL 166073, at *5 (Del. Super. Ct. July 30, 1991) (quoting 61A Am.Jur.2d., *Pleading* § 95) (alterations in original).

performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions have been performed or have occurred."[126]

While the Cadira Complaint lacks any direct statement regarding its satisfaction of conditions precedent, it does seek judicial declarations to that effect. In its bid to avoid dismissal, Cadira points first to paragraph 57 of the Cadira Complaint, which provides, "[b]ased on the allegations set forth in this First Amended Complaint, the Company is entitled to a judicial declaration that it has completed all conditions precedent to funding by KGH."[127]  Cadira then points to the Cadira Complaint's prayer for relief, where Cadira seeks "a judicial declaration that it has completed all conditions precedent to funding by KGH."[128]  While these statements do not expressly plead that Cadira has met all conditions precedent necessary to invoke KGH's funding obligations, at a minimum, they place KGH on notice that Cadira will attempt to prove that all conditions precedent were satisfied.

Contrary to KGH's assertions, reference to specific conditions precedent is not necessary at the pleading stage.[129]  KGH places special emphasis on the Cadira

---

[126] Ct. Ch. R. 9(c); *see also Eisenmann Corp. v. Gen. Motors Corp.*, 2000 WL 140781, at *18 (Del. Super. Ct. Jan. 28, 2000) ("Alleging general occurrence of the conditions precedent, at the pleading stage, is sufficient.").

[127] Cadira Compl. ¶ 57.

[128] Cadira Compl., Prayer for Relief.

[129] *See Eisenmann*, 2000 WL 140781, at *18 (Del. Super. Ct. Jan. 28, 2000) (declining to dismiss for failure to plead that specific conditions precedent were satisfied because

Complaint's lack of "_any_ statement that Cadira's Members unanimously consented to the sums requested by Gertz."[130] While that is true, the failure to identify the consent condition specifically does not warrant dismissal. It is enough that the pleading "allege complete performance generally."[131] The Cadira Complaint does just that, albeit barely.[132]

---

plaintiff "certainly alleges complete performance generally"); _Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC_, 27 A.3d 531, 538 (Del. 2011) (holding that the existence of a general statement that plaintiff met conditions precedent was sufficient to avoid dismissal).

[130] KGH's Reply Br. in Supp. of Mot. to Dismiss the Cadira Compl. ("KGH RB") (D.I. 26) at 4.

[131] _Eisenmann_, 2000 WL 140781, at *17–18; _id._ at *17 ("[I]t is axiomatic that the task of narrowing and clarifying the basic issues and ascertaining the facts relative to the other issues [including satisfaction of conditions precedent] is the role of the deposition and discovery process.").

[132] Compl. ¶ 57; Compl., Prayer for Relief. To be sure, Cadira could have been clearer in its pleading by alleging the facts relating to satisfaction of conditions precedent as facts rather than as prayers for relief. The imprecise pleading invited the argument that the pleading falls short. But, as stated, the pleading burden is to give notice and Cadira has met that burden by notifying KGH of its contention that conditions precedent were satisfied. For now, that is enough. In this regard, I note that the cases KGH cites to support dismissal are inapposite. In each instance, either the court was not asked to engage on the requirements for pleading conditions precedent or the complaint failed to make any reference to conditions precedent, generally or specifically. _See, e.g._, _AIU Ins. Co. v. Philips Elecs. N. Am. Corp._, 2018 WL 367849, at *10 (Del. Ch. Jan. 11, 2018) (not addressing the notice pleading requirements); _Pobst_, 1991 WL 166073, at *5 (noting the complaint made no mention of conditions precedent); _L&L Broad. LLC v. Triad Broad. Co., LLC_, 2014 WL 1724769, at *3 (Del. Super. July 30, 1991) (same); _RBC Cap. Mkts., LLC v. Educ. Loan Tr. IV_, 2011 WL 6152282, at *2 (Del. Ch. Dec. 6, 2011) (same).

## 2. Cadira's Remedy

KGH argues that Count III of the Cadira Complaint must be dismissed because it seeks an injunction to compel the payment of money.[133] KGH points specifically to paragraph 62 of Count III, which "seeks an order compelling [KGH] to comply with its funding requirements as called for in the [Subscription Agreement] and the Company's [Operating Agreement]."[134] It is a general rule of equity that "[i]njunctive orders are not designed to be invoked when the payment of money would accomplish the same result . . . ."[135] To the extent Count III sought only an injunction in aid of an order compelling the payment of $1.5 million, I would agree that this would be nothing more than a thinly veiled request for money damages that falls beyond this court's limited subject matter jurisdiction.[136] But there is more to Count III than meets KGH's eye.

First, Count III "seeks an order enjoining KGH from (i) asserting any rights of ownership in Cadira, or (ii) taking any action in furtherance of the purported role

---

[133] KGH AB/OB at 37–38.

[134] Cadira Compl. ¶ 62.

[135] *Wortz v. Patterson*, 1981 WL 15139, at *1 (Del. Ch. June 5, 1981).

[136] *Anderson v. New Castle Cty. Sch. Dist.*, 1980 WL 267627, at *1 (Del. Ch. Feb. 14, 1980).

38

as a member of Cadira."[137]   Neither of these prayers for relief implicate money damages.  There is no doubt, then, that this component of Count III must survive. Second, even if Count III seeks an impermissible injunction to collect money owed, that does not mean Cadira is without a remedy in this court.  While its jurisdiction is limited, this court obtains subject matter jurisdiction when "(1) the complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute."[138] The court can also acquire subject matter jurisdiction over claims under the "clean-up doctrine."[139]   Because this court, at a minimum, has jurisdiction over Cadira's ownership-related claim for injunctive relief, and KGH's claims for rescission of various agreements with Cadira and Gertz, in an effort to avoid piecemeal litigation, the court may also exercise jurisdiction over Cadira's

---

[137] Cadira Compl. ¶ 63.

[138] *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019), *aff'd*, 2021 WL 1042985 (Del. Mar. 18, 2021); *see also* 10 *Del. C.* § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State.").

[139] *Smith*, 2021 WL 1592463, at *14 (explaining that the clean-up doctrine extends this court's jurisdiction "to resolve purely legal causes of action that are before it as part of the same controversy over which the Court originally had subject matter jurisdiction in order to avoid piecemeal litigation").

claim for the payment of $1.5 million in connection with Cadira's prayer for specific

performance (also an equitable remedy).[140]

For the reasons explained, the Court will not issue the injunction Cadira seeks

for the explicit purpose of compelling KGH to meet its alleged funding obligations.

That is not a proper use of the injunctive remedy. The Court will, however, entertain

Cadira's request for other injunctive relief and its request for a decree of specific

performance and will, alternatively, entertain its prayer for money damages under

the clean up doctrine.[141]

---

[140] While the end result if Cadira prevails on its prayer for specific performance would be a declaration that KGH owes money, in this instance, that is not enough to prevent Cadira from obtaining equitable relief. As noted, Cadira seeks a declaration that it has performed conditions precedent and that Cadira, therefore, must not unreasonably withhold its consent to make the additional $1.5 million investment. The follow-on decree to those declarations, should Cadira prevail, would be a decree that KGH must make the investment as promised. Given that the Court has a basis to exercise clean-up jurisdiction in any event, it is appropriate for the Court to take up the request for specific performance even if it might otherwise cross over the line into a legal remedy. *Cf. Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 262 (Del. 2017), as revised (Mar. 28, 2017) (noting "the Court of Chancery has broad discretion to craft a remedy to address the wrong"); *IMO A.N.*, 2020 WL 7040079, at *15 (Del. Ch. Nov. 30, 2020) (same). In this regard, I note that KGH does not contest the Court's ability to adjudicate all claims presented in this consolidated case. KGH RB at 8 ("KGH's argument is not that the claim should be heard in another forum, but that injunctive relief is simply unavailable because an adequate legal remedy exists."). For reasons stated, I disagree.

[141] I note that, while not raised by the Cadira Parties, this Court also likely has subject matter jurisdiction over Cadira's claims under Section 18-111 of the LLC Act. *Reed v. Brady*, 2002 WL 1402238, at *3 (Del. Ch. June 21, 2002), *aff'd*, 818 A.2d 150 (Del. 2003) ("[Q]uestions of subject matter jurisdiction may be raised *sua sponte* by the Court."). Under Section 18-111, the Court of Chancery may adjudicate "[a]ny action to interpret, apply or enforce . . . the duties, obligations or liabilities among members or managers and of members or managers to the limited liability company." *6 Del. C.* § 18-111. Because Cadira's funding claim seeks to enforce the contractual duties and obligations of KGH, as

## III.    CONCLUSION

For the reasons explained, the Cadira Parties' Motion to Dismiss all counts in the KGH Complaint is DENIED.  KGH's Motion to Dismiss all counts in the Cadira Complaint is also DENIED.

**IT IS SO ORDERED.**

---

a purported member of the LLC, the jurisdictional allowance in Section 18-111 is implicated and serves as another basis for this Court to exercise subject matter jurisdiction over the claim.